IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ANN J. B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:22cv223 |

## REPORT AND RECOMMENDATION

Plaintiff Ann J. B. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 11.

Presently before the Court are the parties' cross motions for summary judgment. ECF Nos. 13, 15. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 13, be **GRANTED**, the Commissioner's Motion for Summary

Judgment, ECF No. 15, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI in June 2019, alleging disability due to hypothyroidism, osteoarthritis, major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. R. at 91–92, 110–11.[1] Plaintiff's applications were initially denied on March 9, 2020, and again denied upon reconsideration on July 20, 2020. R. at 129–31, 171–73. On September 10, 2020, Plaintiff requested a hearing before an administrative law judge. R. at 213.

A hearing was held on April 1, 2021, at which Plaintiff appeared with counsel via teleconference before Administrative Law Judge Monica Flynn ("the ALJ"). R. at 49–84. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 56–83. On August 23, 2021, the ALJ issued a decision finding Plaintiff not disabled. R. at 27–41. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on March 28, 2022, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

Having exhausted her administrative remedies, on May 26, 2022, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On September 12, 2022, Plaintiff filed a Motion for Summary Judgment and accompanying memorandum in support. ECF Nos. 13–14. Therein, Plaintiff argues that the Court should remand because the ALJ failed to properly consider her bilateral foot disorders. ECF No. 14 at 7. On October 12, 2022, the Commissioner filed a Motion for Summary Judgment and brief in support. ECF Nos. 15–16.

---

[1] "R." refers to the certified administrative record that was filed under seal on July 27, 2022. ECF No. 10, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

Plaintiff filed a reply on October 26, 2022. ECF No. 17. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was fifty years old at the time of her alleged disability onset date of March 30, 2019. R. at 91.[2] At the time of the ALJ hearing, Plaintiff lived with her daughter, son-in-law, and grandson. R. at 56. Plaintiff previously worked as a home health aide, a CNA, a hospital cleaner, a cake decorator, and as a baker. R. at 76–77.

### A. Plaintiff's Medical Records Relevant to Her Alleged Bilateral Foot Disorder[3]

In 2019, prior to seeing a podiatrist, Plaintiff demonstrated 5/5 motor strength in her extremities and walked with a normal gait. R. at 401, 509. In September and October 2019, as well as February 2020, Plaintiff's endocrinologist noted that she denied muscle weakness, stiffness, and swelling, and that she walked with a steady gait. R. at 536, 538, 601, 603, 608.

In March 2020, Plaintiff saw Dr. Matthew C. Dairman, a podiatrist, complaining of bilateral foot pain that was greater in her left foot. R. at 584. She remarked that her pain was aggravated by prolonged standing, walking, and activity. R. at 584. Upon examination, Plaintiff had no edema. R. at 584. Dr. Dairman noted that on Plaintiff's left heel, she had moderate pain with palpation plantar medial tuberosity, no pain with side-to-side compression, and no pain posteriorly. R. at 585. As for her right heel, Dr. Dairman noted Plaintiff had mild pain with palpation plantar medial tuberosity, no pain with side-to-side compression, and no pain posteriorly. R. at 585. X-rays of Plaintiff's left and right heels demonstrated pronated foot structures, normal

---

[2] At the ALJ hearing, Plaintiff amended her alleged onset date from December 15, 2017, to March 30, 2019. R. at 27, 91.

[3] Because Plaintiff's other physical and mental impairments are not at issue, the Court does not address additional medical records relating to Plaintiff's other impairments.

3

appearing bone mineralization, infracalcaneal spurs, elevated 1st intermetatarsal angles, elevated hallux abduction angle, lesser metatarsal adductions, and no evidence of fractures or neoplasia. R. at 585. Dr. Dairman diagnosed Plaintiff with Plantar fasciitis, calcaneal spurs in both feet, equinus contracture of both ankles, and pain in both feet. R. at 585. Dr. Dairman explained to Plaintiff her conservative treatment options, such as icing, anti-inflammatory medication, wearing supportive shoes and equipment, and physical therapy. R. at 586–86. He prescribed Plaintiff a splint for her to use for six to eight weeks to "help reduce excessive stress and strain to the plantar fascia and Achilles' tendon." R. at 586.

    Plaintiff followed up with Dr. Dairman in May 2020. R. at 580. At her visit, she reported no improvement in her symptoms overall, despite treatment such as anti-inflammatories, ice, using her splint, strapping, stretching, compression, rest/elevation, and soaks. R. at 580. Plaintiff reported that her pain was higher with standing from rest, and present with prolonged activity and weight bearing activity. R. at 580. Because Plaintiff's course of treatment was generally unresponsive, Dr. Dairman recommended and performed a cortisone injection. R. at 581. Dr. Dairman further prescribed Plaintiff custom orthotics. R. at 581. That same month, Plaintiff's endocrinologist again noted that she denied muscle weakness, stiffness, and swelling, and that she walked with a steady gait. R. at 612, 614. Upon follow up with Dr. Dairman in July 2020, Plaintiff reported that the cortisone injection relieved her pain for about a week, but rated her current pain as an eight out of ten. R. at 686. Dr. Dairman noted that Plaintiff was "less than compliant with consistent arch support, stretching, [and] use of night splint or ice." R. at 686. Dr. Dairman fitted Plaintiff for her custom orthotics and instructed her on the break-in procedure, and also prescribed Medrol. R. at 686–87.

    In September 2020, Plaintiff followed up with Dr. Dairman. R. at 683. There, Plaintiff

stated that "the orthotics are hard and cause pain but . . . there is some improvement, especially after taking [the] Medrol dose pack." R. at 683. Upon examination, Plaintiff had no edema to the feet or ankles, her reflexes were intact, and her strength was graded 5/5. R. at 683. Plaintiff continued to have slight to moderate pain with palpation plantar medial tuberosity. R. at 684. Dr. Dairman offered Plaintiff a second cortisone shot, however, Plaintiff declined due to her fear of needles. R. at 684. Dr. Dairman suggested extracorporeal pulse activation technology ("EPAT") to treat her plantar fasciitis, which Plaintiff indicated she would explore. R. at 684. Plaintiff agreed to continue treatment with ice, stretching, a night splint, and use of her orthotics. R. at 684. Later in 2021, Plaintiff's endocrinologist again noted that she denied muscle weakness, stiffness, and swelling, and that she walked with a steady gait. R. at 692–94.

### B. Relevant Evaluations Completed by State Agency Examiners

Consultative examiner Shawne Bryant, M.D., conducted an in-person examination of Plaintiff in February 2020. R. at 555. Dr. Bryant noted that Plaintiff has osteoarthritis, which affects her back and knees, and is relieved with Gabapentin. R. at 555. At that time, Plaintiff reported being able to sit for forty-five minutes at a time, and stand and walk for an hour at a time. R. at 555. Upon physical examination, Dr. Bryant noted that Plaintiff had some difficulty rising from the supine position, but was able to get on and off the examination table and remove her shoes and socks without assistance. R. at 556. Plaintiff's lower extremity muscle strength was 5/5 bilaterally. R. at 557. She had bilateral 1+ ankle edema without cyanosis, clubbing, or varicosities. R. at 557. As for her gait, Dr. Bryant noted that Plaintiff had a "waddling gait," was "[a]ble to walk on her heels and toes, had some loss of balance with walking in tandem," and was "able to stand on one foot bilaterally and squat to 30." R. at 557. She did not use an assistive ambulatory device. R. at 556. Dr. Bryant opined that Plaintiff could stand and walk an hour at a

5

time during an eight-hour workday due to her lower back pain, bilateral knee pain, and obesity, and that Plaintiff could sit forty-five minutes at a time in an eight-hour workday. R. at 557. Dr. Bryant also opined that Plaintiff would be able to stand three hours in an eight-hour workday with normal breaks. R. at 558. Dr. Bryant summarized Plaintiff's diagnoses as follows: "[h]ypothyroidism, osteoarthritis of lumbosacral spine and bilateral knees, anxiety, major depression, and posttraumatic stress disorder, right upper extremity weakness with further evaluation pending, hypertension with elevated blood pressure due to noncompliance with medications, hypercholesterolemia, and obesity." R. at 557. Dr. Bryant did not mention any symptoms or diagnoses regarding Plaintiff's feet.

On March 9, 2020, state agency examiner Michael Koch, M.D., reviewed Plaintiff's record and opined that she should stand and/or walk and sit with normal breaks for about six hours in an eight hour-workday. R. at 103. He further opined that Plaintiff could lift/carry ten pounds occasionally and frequently. R. at 103. Dr. Koch opined that these limitations were due to degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the bilateral knees, a positive straight-leg raise test, and generalized joint pain. R. at 103–04. Upon reconsideration on July 14, 2020, state agency examiner Robert McGuffin, M.D., reviewed Plaintiff's record and agreed with Dr. Koch's findings. R. at 144–46.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified that she completed the eighth grade. R. at 56. Plaintiff testified that she is unable to work due to her thyroid removal, arthritis in her lower back, stiffness down her hip and in her legs, epicondylitis, nausea, depression, and pain in her body and feet. R. at 64. She explained that standing causes her trouble with work because she feels a pinching pain in her back and down her right leg. R. at 65. She feels pain and fatigue every day.

R. at 66–67. Plaintiff testified that her children do all the chores in the house. R. at 67. She can dress and feed herself. R. at 68. Plaintiff takes Tylenol for her back pain, and wears a brace on her elbow if she is going to do anything strenuous. R. at 70–71. Her elbow pain from epicondylitis bothers her while she makes cakes. R. at 71. Plaintiff also testified that her fingers get numb on her right arm. R. at 72. She explained that she can stand for about thirty minutes to an hour before having to sit for at least thirty minutes. R. at 72. While making cakes, Plaintiff testified that she sits on a stool or computer chair. R. at 74.

At her ALJ hearing, Plaintiff testified that she has plantar fasciitis and a bone spur in her foot. R. at 69. She testified that that it is "[v]ery painful" for her, and that the treatment she had for this condition did not work. R. at 69,. Plaintiff testified that her foot pain, in combination with her other pains, make it difficult for her to walk around a store. R. at 69. The ALJ acknowledged some notes in Plaintiff's record that she had some loss of balance doing tandem walking. R. at 73. Plaintiff testified that she does not use an assistive device, but felt like using an assistive device would help her balance when she is experiencing stiffness and pain. R. at 73.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment

set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 30, 2019.[4] R. at 29. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; osteoarthritis; hypothyroidism; hypertension; hyperlipidemia; obesity; and depression. R. at 30. The ALJ determined that those impairments "significantly limit [Plaintiff's] ability to perform basic work

---

[4] At the ALJ hearing, Plaintiff amended her alleged disability onset date from December 15, 2017, to March 30, 2019. R. at 54.

activities." R. at 30. The ALJ also noted that Plaintiff was diagnosed with anxiety disorder, post traumatic stress disorder, and somatoform disorder, however, the ALJ determined that those impairments were nonsevere. R. at 30. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1. R. at 31–33.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations: Plaintiff can only occasionally climb, stoop, kneel, crouch, and crawl; no more than frequently balance; no more than occasional exposure to workplace hazards; and no more than frequently interact with supervisors, coworkers, and the public. R. at 34. The ALJ noted that any time off-task could be accommodated by a normal break schedule. R. at 34. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p." R. at 34.

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a cake decorator, which is considered light work. R. at 39. Nonetheless, the ALJ made an alternative finding at step five that Plaintiff has skills transferable to other work, including the occupation of companion, which is considered light work. R. at 40. Additionally, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including housekeeping cleaner, cashier, and fast foot cashier. R. at 41. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, March 30, 2019, through the date of her decision, August 23, 2021. R. at 41.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "'evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 Fed. Appx. 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises two challenges to the ALJ's decision. First, Plaintiff contends that the ALJ erred by failing to acknowledge the relevant medical evidence regarding

Plaintiff's allegedly severe bilateral foot disorders. ECF No. 14 at 6. Plaintiff contends that her argument is not whether the ALJ classified any impairments as severe or nonsevere at step two of the sequential evaluation process, but rather, that the ALJ did not acknowledge whether Plaintiff's bilateral foot disorders were medically determinable impairments at all. *Id.* at 7–11. Second and relatedly, Plaintiff further contends that because the ALJ did not acknowledge Plaintiff's bilateral foot disorders or take those diagnoses into consideration at all, substantial evidence does not support the ALJ's rejection of Drs. Bryant, Koch, and McGuffin's opinions that limited Plaintiff to lifting no more than ten pounds. *Id.* at 12. Plaintiff argues that the ALJ's failure to acknowledge this impairment is not harmless because had the ALJ considered it, the ALJ may have limited Plaintiff to a sedentary RFC, which would have resulted in a finding of disability. *Id.* at 6. In response, the Commissioner argues that Plaintiff did not meet her burden of demonstrating that her bilateral foot disorders satisfy the twelve-moth durational requirement, and that her bilateral foot disorders are severe such as to warrant RFC limitations. ECF No. 16 at 10–12. Similarly, the Commissioner argues that the ALJ did not err in evaluating the opinions of Drs. Bryant, Koch, and McGuffin. *Id.* at 15–16.

At step two of the sequential analysis, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable impairments." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The regulations provide that a "medically determinable impairment" must

> result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

§§ 404.1521, 416.921 Further, the impairment must meet the durational requirement—that is, it must last or be expected to last for a continuous period of at least twelve months. §§ 404.1509, 416.909.

Generally, at step two, an ALJ must identify a claimant's alleged impairments and explain whether or not they are medically determinable before considering whether or not the claimant's medically determinable impairments are severe. See, e.g., *Jamie L. V. v. Kijakazi*, No. 3:20cv263, 2021 WL 4243438, at *8 (E.D. Va. Sept. 17, 2021) (holding no error in ALJ's finding that Plaintiff's blackouts were "not medically determinable" because she had unremarkable and normal neurological examinations, MRIs and electroencephalograms); *Massie v. Kijakazi*, No. 3:20cv545, 2021 WL 4221629, at *3 (S.D.W. Va. Aug. 19, 2021), *report and recommendation adopted*, No. cv3:20cv545, 2021 WL 4203653 (S.D.W. Va. Sept. 15, 2021) (noting that the ALJ "also considered [the Plaintiff's] migraine headaches, anxiety, and depression, but the ALJ concluded that the impairments were not medically determinable."). In *Massie v. Kijakazi*, the court found that an ALJ erred by failing to evaluate whether certain impairments were medically determinable, especially in light of "clear diagnoses and treatment." *Massie*, 2021 WL 4221629, at *7. The court noted that because the ALJ failed to evaluate impairments that had been diagnosed, the ALJ "did not proceed to consider whether the impairments had more than a minimal effect on Claimant's ability to perform basic-work activities." *Id.* Under these circumstances, the court reasoned that the ALJ's step two finding was devoid of adequate analysis, and the court was unable to determine whether substantial evidence supported the ALJ's decision. *Id.*

Here, at step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; osteoarthritis; hypothyroidism; hypertension; hyperlipidemia; obesity; and depression. R. at 30. The ALJ considered Plaintiff's diagnoses of somatoform disorder and

post-traumatic stress disorder, and, found that those conditions were nonsevere because they "were diagnosed only on isolated occasions, and there appears to be no treatment directed at these disorders." R. at 30. Finally, the ALJ considered Plaintiff's diagnosis of anxiety disorder, and found that Plaintiff's anxiety was effective with treatment and did not meet the paragraph B criteria. R. at 30. The ALJ did not mention anything related to Plaintiff's diagnoses of Plantar fasciitis and calcaneal spurs in both feet at either step two or throughout the remainder of the decision.

In this case, the ALJ erred by failing to mention Plaintiff's foot disorders, including her diagnoses of Plantar fasciitis and calcaneal spurs. Though Plaintiff did not receive extensive medical treatment related to these diagnoses, she did visit a podiatrist at least four times, and obtained treatment including custom orthotics, a cortisone shot, and a Medrol prescription. R. at 580–81, 686–87. Further, Plaintiff's diagnoses were confirmed through X-rays, which demonstrated infracalcaneal spurs, elevated 1st intermetatarsal angles, elevated hallux abduction angle, and lesser metatarsal adductions. R. at 585. Because the ALJ did not discuss these diagnoses at all, the Court cannot determine whether the ALJ recognized Plaintiff's foot disorders and considered them not medically determinable in the first place. If the ALJ were to proceed and consider those disorders medically determinable, the ALJ would then be obligated to consider their severity and determine whether Plaintiff's symptoms of these diagnoses impacted her RFC.[5] However, without the ALJ's analysis as to whether those disorders are medically determinable in the first place, the Court is not in a position to consider whether substantial evidence supports the

---

[5] Notably, the ALJ did discuss Plaintiff's somatoform disorder and post-traumatic stress disorder, both of which had only been diagnosed once by consultative examiners and for which Plaintiff did not receive any treatment. R. at 30. The fact that the ALJ analyzed these diagnoses at step two, but did not analyze Plaintiff's foot disorders—which were diagnosed on several occasions and which she received treatment for—supports the notion that the ALJ's lack of analysis was an oversight requiring remand.

ALJ's RFC determination. Like in *Massie*, the ALJ's step two analysis is inadequate, and the Court is unable to determine whether Plaintiff's foot disorders had more than a minimal effect on Plaintiff's ability to perform basic work activities. The Court is unable to meaningfully review the ALJ's decision, and remand is required.

As for Plaintiff's second argument—that by failing to consider Plaintiff's bilateral foot disorders the ALJ also improperly rejected Drs. Bryant, Koch, and McGuffin's opinions that limited Plaintiff to lifting no more than ten pounds, the Court finds this argument unnecessary to address in light of remand on Plaintiff's first argument. On remand, if the ALJ determines those impairments are medically determinable, then the ALJ should consider that evidence as required by the regulations when evaluating the medical opinions in the record.

## VI. RECOMMENDATION

Because substantial evidence does not support the Commissioner's decision, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 13, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 15, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

...
...
...
...
...

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
March 29, 2023